```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK


TOWN OF BROOKHAVEN,           . Civil No. 14-cv-02286-GRB
                              .
         vs.                  .
                              . 100 Federal Plaza
                              . Central Islip, New York
SILLS ROAD REALTY LLC, et al.,.
                              . DATE: June 25, 2014
. . . . . . . . . . . . . . . .

              TRANSCRIPT OF TELEPHONE CONFERENCE
                BEFORE HONORABLE GARY R. BROWN,
                 UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


For The Plaintiff:       ROSENBERG CALICA & BIRNEY LLP
                         BY: ROBERT M. CALICA, ESQ.
                             JUDAH SERFATY, ESQ.
                         100 Garden City Plaza
                         Suite 408
                         Garden City, NEW YORK 11530

For Sills Road Realty:   FOLEY & LARDNER LLP
                         BY: YONATON ARONOFF, ESQ.
                             VANESSA MILLER, ESQ.
                         90 Park Avenue
                         New York, NEW YORK 10016

For Sills Expressway     FARRELL FRITZ P.C.
Associates:              BY: KEVIN PATRICK MULRY
                         1320 RXR Plaza
                         Uniondale, NEW YORK  11556
```

**FILED CLERK 8/7/2014 U.S. DISTRICT COURT EASTERN DISTRICT OF NEW YORK LONG ISLAND OFFICE**

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

**TRACY GRIBBEN TRANSCRIPTION, LLC**
**27 Beach Road, Unit 4**
**Monmouth Beach, NJ  07750**
**(800) 603-6212**
**(732) 263-0044    Fax No. (732) 865-7179**
**www.tgribbentranscription.com**

```
                        I N D E X


ARGUMENT                                PAGE

    BY MR. ARONOFF                      3/9

    BY MR. CALICA                       4/13

    BY MR. MULRY                         6


DECISION                                 18
```

1           THE CLERK:  Calling civil case 2014-2886 (sic), Town
2  of Brookhaven versus Sills Road Realty.  Counsel, please state
3  your appearances.
4           MR. CALICA:  Good morning, Your Honor.  It's Robert
5  Calica, C A L I C A and Judah Serfaty, S E R F A T Y, of
6  Rosenberg Calica and Birney LLP.  We're of counsel to the
7  Brookhaven Town Attorney for plaintiff Town of Brookhaven.
8           THE COURT:  Good morning, Mr. Calica.
9           MR. CALICA:  Good morning, Your Honor.
10           MR. ARONOFF:  Good morning, Your Honor.  It's Yonaton
11  Aronoff and Vanessa Miller of Foley and Lardner for all of the
12  defendants except Sills Expressway.
13           THE COURT:  Very good.
14           MR. MULRY:  Kevin Mulry from Farrell Fritz for Sills
15  Expressway Associates.  Good morning, Your Honor.
16           THE COURT:  Hello, Mr. Mulry.  I think it's been 12
17  hours since we last spoke. So Mr. Aronoff, I received your
18  letter of June 24th and wanted to give you an opportunity to
19  talk about what it is that you would like to do.
20           MR. ARONOFF:  What I'd like to do.  Well, I mean
21  first of all, first and foremost Your Honor, the purpose of the
22  letter was to make sure that the Court understood that there
23  was no intent to misrepresent to the Court.  I mean that's very
24  important for us obviously for you to understand that because
25  we take it very seriously when you see in a decision that

1  there's been a misrepresentation.  It reflects both on the
2  client and on the attorney and we want to address that with
3  you.  That was one of the principle purposes of the letter.
4          In terms of going further what we want to do, I mean,
5  you know, to the extent the Court understands or if we can
6  convince Your Honor that there was no intent to mislead, what
7  we think was a misunderstanding with respect to that statement
8  in the declaration, obviously our preference would be to have
9  that part of the opinion stricken.
10         I don't expect that it's going to change your
11 ultimate conclusions and that's why we haven't requested or
12 thought necessary to file a formal motion for reconsideration.
13 We're willing to not do that if the Court allows us to proceed
14 that way.  I mean, that would -- You're asking me what I would
15 like, that would be the best outcome.
16         THE COURT:  Okay.  Mr. Calica, do you have a position
17 on all of this?
18         MR. CALICA:  Yes, Your Honor.  I'm looking at Mr.
19 Miller's May 7, 2014 declaration.
20         THE COURT:  Mr. Calica, let me interrupt by saying,
21 just so the record is clear, I have it here as well if anybody
22 wants to refer to it.  So go ahead.
23         MR. CALICA:  And paragraph 8 is, as we commented, is
24 deliberately calculated to mislead.  And what it begins is it
25 says the Town's motion seeks to enjoin "any and all further

1  action and activities to excavate, screen, grate, and remove
2  native sand and vegetation from a 93 acre site located to the
3  east of the 28 acre local railway yard facility" and the Town
4  appears to contend in its motion papers that B.R.T. is
5  illegally grading the entirety of the 93 acre site.  This is
6  not accurate; nor are the multitude of other accusations about
7  B.R.T.'s construction activities and development plans set
8  forth in the Town's motion.
9           Then in paragraph 9 they go, as we have advised the
10 Town repeatedly, the only construction activity presently
11 occurring and planned for the foreseeable future is grading the
12 shaded track loop area depicted in Exhibit O.  And it
13 continues.
14          Judge, that line did communicate to the Court, and by
15 any fair reading was intended to communicate and report that
16 the Town's claim that they were grading the entire 93 acre site
17 is false.  It may be technically correct that in effect at a
18 standstill reached before Judge Bianco, at that time the B.R.T.
19 defendants said Judge, while this motion is pending we're now
20 limiting what we're doing to digging in the track bed.  And I
21 don't have that transcript but that's what they said.
22          But when the declaration was filed it, by any fair
23 reading, was calculated to impart the false notion that they
24 were excavating only in the track bed.  And that wasn't even
25 what was going on when that declaration was filed at that time.

1  At that time they made that a limitation in an agreement with
2  the Court on an interim basis after the filing.  So we submit
3  Your Honor's contention, finding as its others, are amply
4  supported by the record and should not be disturbed.
5          THE COURT:  Before I let Mr. Aronoff respond, Mr.
6  Mulry do you have anything to add?
7          MR. MULRY:  Yes, Your Honor.  I think we agree that
8  there is no misrepresentation in the declaration.  And Mr.
9  Calica referred to paragraph 8 in addition to paragraph 9.  The
10 title above those two paragraphs is current operations and
11 planned expansion of B.R.T.  This declaration was submitted in
12 the context of a motion for preliminary injunction which would
13 enjoin operations going forward.  So it was relevant to whether
14 that injunction should be issued, whether -- what were the
15 current operation.  I believe --
16         Your Honor referenced on page 4 of your opinion Mr.
17 Miller's testimony where he referred to the reorientation of
18 the excavation.  I don't think there's any question that
19 excavation before the Town filed its lawsuit was occurring on
20 parcel B and C and it was outside the track area.  What this
21 paragraph 8 and 9 refer to are discussions that the B.R.T.
22 defendants -- And I will say that we were not involved in the
23 case at that time, had not been retained yet.
24         But it refers to the discussions that were going on
25 between the B.R.T. defendants and the Town to try to have an

1  interim stay or resolution that would avoid a preliminary
2  injunction hearing.  So those two paragraphs are in the context
3  of what is going on presently, and I believe that is what Mr.
4  Miller was referring to that the current operation after the
5  filing of the lawsuit by the Town was more confined to the
6  track area.
7           Also this is, the interpretation that Your Honor had
8  in the opinion is something that was never raised by the Town
9  in any of the briefing or at the hearing.  And certainly if the
10 Town was under the impression that paragraphs 8 and 9 were
11 intended to convey that the B.R.T. defendants were arguing and
12 that Mr. Miller was saying that there had never been any
13 excavation outside the track area, the Town certainly would
14 have raised that.
15           THE COURT:  Although --
16           MR. MULRY:  So although they --
17           THE COURT:  Mr. Mulry, in response to --
18           MR. MULRY:  -- the fact that the Town never made that
19 interpretation at the hearing shows that the parties certainly
20 were under the understanding as to what it meant.  And
21 certainly the reading of it -- We're looking at how the -- I
22 think we're understanding how the Court came to its conclusion.
23 But I think it's hard to argue that any of the parties
24 understood the paragraphs in that declaration to refer to
25 anything other than the current operations at the site after

1  the filing of the lawsuit by the Town.
2             THE COURT:  Mr. Mulry, just one point on this.  When
3  you say this wasn't really raised, I mean it was raised in a
4  slightly different context, right?  There was a discussion,
5  there was testimony by the Town engineer about that there was
6  an agreement that the excavation would only be done within 150
7  feet of the track right away.  And there was denials as to
8  whether that discussion took place.  So I think the issue was
9  sort of on the table.  I agree with you that it's temporally
10 removed, but there was discussion about it.  Isn't that fair?
11            MR. MULRY:  I believe -- I don't have that testimony
12 in front of me.  I believe the town official was referring to
13 conversations he said occurred one or two years previously.  I
14 don't believe the town official was referring to the
15 discussions that took place after the filing of the complaint.
16 Although I would ask Mr. Aronoff and Mr. Calica if they have a
17 different recollection of that.  I don't.  That's my
18 recollection of that town official's testimony.
19            MR. ARONOFF:  That's my recollection also.
20            MR. CALICA:  That town official did not have any
21 conversations with the Town.  Did not talk to the Town after
22 the lawsuit was filed.
23            MR. ARONOFF:  Right.  Exactly.
24            MR. CALICA:  Just discussions between legal counsel.
25            MR. ARONOFF:  Right.

1           THE COURT:  But I will say that there was discussions
2  during the hearing about whether there were representations
3  earlier that -- whether it would be limited to the track site.
4  So that's why, that's what caused me to look at it in the first
5  place.  And I recognize it's a different time frame.
6           MR. CALICA:  Your Honor, Exhibit 1 was the Fistra
7  (phonetic) letter given to the Town that the -- that it would
8  be limited to -- I forgot the distance from center line.
9           THE COURT:  Right.  The 75 feet or 150 --
10          MR. ARONOFF:  Right.  But Exhibit O to the Annette's
11 (phonetic) declaration Rob, which is what's being referred to
12 in paragraph 9, was the shaded -- That was the proposal that we
13 provided in connection with the stipulation where we were
14 trying to resolve between counsel a going forward plan.  And we
15 said this is what we will confine our activities to going
16 forward and we're going to reorient our construction project.
17 We think if we stay within the shaded track area it will keep
18 us busy for six months or longer and that will minimize any
19 harm.
20          Now, then we ultimately had a dispute which led to
21 the filing of the papers about how deep we were going to go and
22 some other issues.  But it was never intended to make a
23 representation that we had not excavated beyond the shaded
24 track area before the lawsuit.  It would have been -- I mean,
25 for us to do that Judge, the complaint attaches pictures of

Case 2:14-cv-02286-GRB Document 72 Filed 08/07/14 Page 10 of 20 PageID #: 1446

Aronoff/Argument                              10

1  excavation that extend well beyond the shaded track area.  I
2  mean, it would not make any sense for us to then try to deny
3  that in a declaration subsequently.
4           THE COURT:  Okay.  I understand.  I guess what I
5  would say Mr. Aronoff, and I'll let you think about this for a
6  moment and then tell me where you want to go next, which is the
7  following.  I took a good look at the declaration this morning
8  and the one thing I note that is conspicuously absent is any
9  reference to the fact, oh we were doing this other grading plan
10 and then we reoriented it and now we're only -- I mean, it's
11 not clear --
12          MR. ARONOFF:  Because I didn't want to reference
13 settlement discussions, Your Honor.
14          THE COURT:  No, no, I understand.  But you're missing
15 my point, which is for somebody -- For the reader who is new to
16 the issue --
17          MR. ARONOFF:  Yes.
18          THE COURT:  -- reading the declaration, I would say
19 it's at least incomplete in a sense that there should have been
20 an explanation that we were doing something much broader, in a
21 sense this has been filed, we limited it.
22          MR. ARONOFF:  Right.
23          THE COURT:  That's not there.  There's some other
24 language in there.  In other words, for example I notice that
25 this declaration is filed on May 7th.  I don't remember exactly

1  when the case was filed, I think it was in April.  You know,
2  even the phrase that we're talking about is --
3          We lead off with the introductory language as we've
4  advised the Town repeatedly.  Well, if you just changed your
5  plans how many times could they really change that?  There
6  isn't, as I noted in the opinion, much of a record on the issue
7  of the reorientation and --
8          MR. ARONOFF:  Right.
9          THE COURT:  -- what that meant and how that changed.
10 And I do not -- Look, I want to be fair to everybody here and I
11 don't believe in besmirching someone's reputation unfairly.
12 And if you want me to look at the issue I will.  But I will
13 also say to you that what was to me a clear credibility issue
14 in this case, whether repeated representations that the sand
15 mining was a small consideration, a minor consideration,
16 whatever the phrase was that was used --
17         MR. ARONOFF:  Right.
18         THE COURT:  -- five times.  I mean, to me that's the
19 driving force far more than this issue which is the aside
20 issue.  So if you want we could explore this a little bit more,
21 you could come in with more data, we could make more of a
22 record on this.  But I'm not sure using the outcome tree that
23 it really matters at the end of the day.
24         MR. ARONOFF:  Well, can I respond to that, Judge?
25         THE COURT:  Yes, go ahead.

1            MR. ARONOFF:  I hear you and I understand why the
2   Court would read it the way it did.  And I understand why you
3   would view it as having information that was missing.  And that
4   was deliberate, although in retrospect obviously we would have
5   been more complete if we understood that it would lead to this.
6   The repeated conversations are referenced as to settlement
7   discussions that we had with the Town leading up to the filing
8   of its motion.  We met with the Town twice, we had numerous
9   telephone conversations with the Town.  There were multiple
10  conversations.  There actually were repeated conversations in
11  the months leading up to, I guess it was weeks leading up to
12  the filing of their motion.  And yes, that should have been
13  made clearer.
14            I guess I would also say that we -- So we were in
15  front of -- You were the third Judge that we were in front of.
16  I know I explained it to Judge Bianco in connection with the
17  TRO application that we had reorientated.  I explained it
18  somewhat to Judge Wexler.  And to the extent I didn't explain
19  it thoroughly to you, that's on me, Your Honor.
20            And you know, it was never an intent to mislead.  And
21  I understand it doesn't, it may not matter to the ultimate
22  conclusion and I hear what you're saying about your concern
23  about misrepresentations going back in time and I obviously
24  have a different view of that.  But I understand where the
25  Court is coming from.

1               But I would hate to have that color this particular
2    issue.  And it is important.  I mean, to have in a publicly
3    available document that the fact that Mr. Miller has made a
4    misrepresentation to the Court, a knowing misrepresentation,
5    that's going to potentially impact his career.  And frankly
6    Judge, it may impact my career and Vanessa's career.
7               I mean, I've already -- I'm just telling you this to
8    be frank, Your Honor, I've already been advised by the firm
9    that I have to remove myself from a different unrelated case
10   because of that part of this opinion, believe it or not.  So it
11   does have consequences to the people involved and that's why
12   it's important enough for us to explore it further.  I mean, I
13   say that just so the Court understands why we're taking it as
14   seriously as we are.
15              MR. CALICA:  Your Honor, this is Robert Calica.
16   Listen, I'm not going to heap on Mr. Aronoff's reported
17   internal difficulties with his firm, but that's really not a
18   consideration, I think, to the context of this case.
19              I've taken the position that the declaration prepared
20   by counsel and signed by the witness was intended to create a
21   false impression, and I have and I've made my position clear.
22   It was so carefully couched in a manner to impart the idea that
23   they had not excavated outside of the track bed that it was
24   calculated to mislead.  And particularly when it says the
25   Town's claims that we're grading the entire parcel are false.

Calica/Argument                                              14

1  But I'll read to Your Honor what Mr. Aronoff said in front of
2  Judge Wexler.  And perhaps there's a bit of you reap what you
3  sow.  It says -- The Court asks --
4           MR. ARONOFF:  If I could, Your Honor?
5           MR. CALICA:  Can I just read into the record --
6           THE COURT:  Let him finish.  I'll let you respond.
7  Don't worry about it.  Go ahead.
8           MR. ARONOFF:  Just the citation so we can read along.
9           THE COURT:  Okay.
10          MR. CALICA:  Oh, it's page 17 of the proceedings
11 before Judge Wexler on May 14, 2014.  It says --
12          "THE COURT:  I'm interested in how much land has been
13 taken out and is going to be taken out.  You keep on talking
14 about something else.  Answer my question.  I was rough on him,
15 meaning me, I'm going to be rough on you."
16          "MR. ARONOFF:  You're asking in terms of cubic feet?"
17          "THE COURT:  Depth."
18          "MR. ARONOFF:  Here is the highest elevation point of
19 the cite.  Let's say they're about 100 feet above sea level,
20 parts of the area have been graded down between 10 to 30 feet
21 so now it's 90 to 60 and we'll go ultimately to 50."
22          "THE COURT:  So it's going to be reduced 50 feet?"
23          "MR. ARONOFF:  Parts of it, yes."
24          "THE COURT:  Okay."
25          "MR. ARONOFF:  That's correct.  But again what I want

to zero in on is the only activity that's going on right now."

"THE COURT: You call that limited regrading work?"

"MR. ARONOFF: If you're referring to the letter that my colleague pointed to earlier --"

"THE COURT: Yes."

"MR. ARONOFF: -- that letter was addressing the first phase of grading that was going to begin in early -- the first half of 2012. So at that point in time they were doing limited regrading work. It's now been two years of grading work so I don't know how to characterize it any more than it is. The letter was certainly accurate at the time it was, September."

"THE COURT: Is it accurate today?"

"MR. ARONOFF: Well, it is in a different sense, Judge. Is the only grading work being done today is grading the loop where the track is going to go. Your Honor, I really want to get to the heart of the issue."

MR. CALICA: Judge, my adversary here continued the same tact of trying to persuade the Court that what B.R.T. was doing in that instant in time after we filed suit as part of an effort to moot the TRO by then limiting their grading to the track was not the information that was imparted by the Miller declaration and is not the sense of what was going on that was fairly and reasonably communicated at pages 17 and 18 of the proceedings before Judge Wexler on May 14th, 2014. At best it

1  was a deliberate lack of clarity.  It was advocacy on behalf of
2  a client but it clearly supported the inference or conclusion
3  Your Honor embodied in the preliminary injunction.
4              THE COURT:  Mr. Calica, let me just say what I just
5  heard you read could also be read two ways.  In other words, I
6  think counsel indicated that now they have changed it and we're
7  just going to do the track.  That's what it sounded like to me.
8              MR. ARONOFF:  Right.
9              THE COURT:  But I have a potential fix.  Mr. Aronoff,
10 you know, to be completely open about this which I believe in
11 trying to do in the context of litigation, I will say to you
12 that we could go through some more proceedings or some more
13 record fact finding, but it's going to be muddy at the end of
14 the day, right?  It could get messier and it's going to be an
15 expense probably not worth bearing.
16             What I would be willing to do would be to enter an
17 order that would say something along the lines that counsel has
18 called to the attention of the Court that that particular
19 statement may well have been incomplete rather than an
20 intentional misrepresentation.  But I ultimately find that the
21 testimony is immaterial to the outcome so therefore no motion
22 for reconsideration need be made.  Does that help you?
23             MR. ARONOFF:  Yes, Judge.  I think it does.
24             THE COURT:  Mr. Calica, I assume --
25             MR. ARONOFF:  I would greatly appreciate that.

1                THE COURT:  -- I do that over your objection?

2                MR. CALICA:  Your Honor, I would not object to that.

3    But I will add this.  In fairness to this record the more

4    egregious concern I have in this record is Your Honor denied

5    our application which was, you know, amply supported as Your

6    Honor knows, by cases such as Dell against Hopkins (phonetic).

7    On re-opening the record to point that our discovery that

8    B.R.T. defendants do not own or have control over parcel C

9    where they're doing the bulk of their excavation.  And when --

10               THE COURT:  You mean parcel --

11               MR. CALICA:  -- we challenged that --

12               THE COURT:  Wait, wait, wait.  You mean parcel C

13   because of the LIPA thing?

14               MR. CALICA:  Yes.  And when Your Honor --

15               THE COURT:  Okay.  In all candor Mr. Calica, I think

16   the one piece -- One thing I can say with some degree of

17   certainty is that no one could accuse me of being not

18   thoughtful about this matter.  I spent a lot of time thinking

19   about it.

20               MR. CALICA:  Without question.  I didn't mean to

21   suggest --

22               THE COURT:  No, no, no.  I'm going to say -- And no

23   matter how much I thought about it I just couldn't think about

24   how that was relevant.  I really, I just couldn't figure it

25   out.  So I'm less moved by that.  So that's why I'm happy to

1  say no, I'm not going into that because, you know, if they have
2  a problem with LIPA they've got to go work it out with LIPA.  I
3  don't think that's --
4           MR. CALICA:  It's two things.  One is they said flat-
5  out to the Court that they have an easement and the easement
6  they had was on B and parcel C.  It's relevant for an appellate
7  record, Your Honor.  Because we say their claim of laying track
8  is pretext, if they say to the Court we have ownership or
9  easements over LIPA in order to lay this track and LIPA gives a
10 cease and desist order saying you can't lay this track because
11 we own the land, we haven't permitted you to excavate it or
12 grade it, it's important evidence -- I can do it by formal
13 application, Your Honor, to reconsider.  But --
14          THE COURT:  Well, no, no, you already did.
15          MR. CALICA:  But what I'm saying is --
16          THE COURT:  You already did.  Wait, wait, wait.  You
17 already did, I already denied it.  And I'm reaffirming the
18 denial because it doesn't matter at this point, right?  You've
19 gotten the injunction --
20          MR. CALICA:  But Your Honor, that --
21          THE COURT:  Mr. Calica, stop.  Mr. Calica.  Mr.
22 Calica, stop now.
23          MR. CALICA:  I'll let it go, Judge.
24          THE COURT:  Just wait, before you snatch defeat from
25 the jaws of victory.  You got the injunction, right?  That may

1  be important evidence down the road, right?  Because I expect
2  without knowing that there will be additional proceedings here,
3  and additional proceedings elsewhere.  And that may be very
4  important evidence at that juncture.  But for today's purposes
5  there's no more sand mining going on.  We're done, right?
6           MR. CALICA:  Right.
7           THE COURT:  Until further order of the Court, at
8  which point you can introduce that if you want.  All right?
9           MR. CALICA:  Thank you, Your Honor.  And I'm
10 certainly mindful of Your Honor's ruling and the reasons for
11 it.  Thank you.
12          THE COURT:  All right.  Good.  So I will enter an
13 order along the lines we discussed in response to the letter.
14 Because in fairness, I don't want anyone to be unfairly
15 besmirched.  And again, I find it ultimately irrelevant to the
16 outcome.  But Mr. Aronoff, I don't want to cause any
17 unnecessary problem for you or your client, so I'm going to
18 enter that.
19          MR. ARONOFF:  I appreciate that, Judge.
20          THE COURT:  All right.
21          MR. ARONOFF:  Thank you.
22          THE COURT:  With this particular audience I hesitate
23 to say this but is there anything else we should talk about?
24          MR. CALICA:  Your Honor I think has disposed of Mr.
25 Aronoff's application with our consent to Your Honor's

1  suggestion.  And Your Honor has spared me an application for
2  reconsideration by being very informative as to what Your
3  Honor's reasoning was, and that issue is preserved for another
4  time.  So that satisfies the Town and I appreciate it.
5           THE COURT:  Excellent.  Mr. Mulry, anything from you?
6           MR. MULRY:  No, Your Honor.
7           THE COURT:  All right.  Mr. Aronoff, you're good,
8  right?
9           MR. ARONOFF:  Yes.  Thank you.
10          THE COURT:  All right, very good.  Have a good day
11 folks.
12          MR. CALICA:  Thanks so much, Your Honor.
13          THE COURT:  Bye.
14                    *         *         *
15                         CERTIFICATION
16          I, TRACY GRIBBEN, court approved transcriber, certify
17 that the foregoing is correct transcript from the official
18 digital audio recording in the matter of Town of Brookhaven v.
19 Sills Road Realty LLC, et al, heard by the U.S. District Court
20 on **June 25, 2014.**
21
22 _____
23 /s/ TRACY GRIBBEN
24 TRACY GRIBBEN TRANSCRIPTION, LLC    DATE August 7, 2014
25